BOYER, Chief Judge
(dissenting).
The record clearly reflects that all parties were sophisticated in business affairs. It is also clear that the lending banks intended, to make the loan which gave rise to the mortgage here involved to the corporation (Elm) and not to the individuals. All obligations, liabilities and responsibilities, except those created by the personal guaranty, are those of the corporations involved. The individuals (being the individual appellants in this case) have no responsibilities, liabilities nor obligations except those specifically provided in the personal guaranty. Indeed, appellees do not contend nor argue otherwise. The individuals did not, in their individual capacities, agree nor undertake to obtain mortgage insurance insuring the payment of any portion of Elm’s indebtedness to appellees. Only Elm agreed to procure such insurance and its default in that regard in no manner altered the obligations of the individuals. The sole obligation of the individuals was a conditional guaranty to pay 10% of Elm’s indebtedness to appellees. Even that obligation was limited by the terms of the written guaranty. The “corporate veil” was not pierced. There was no attempt to pierce it. The corporation is a distinct entity apart and separate from its principals. I therefore concur that the maximum amount for which the individual appellants could have been held responsible, under any circumstances, was 10% of the corporate obligation to appellees.
However, as above noted, the individuals’ obligation to pay any amount was limited by the last paragraph of the written guaranty agreement. That paragraph provides as follows:
“This guarantee shall continue in full force and effect from the date hereof until the principal balance under said loan shall be reduced to $728,000.”
It will be noted that the above quoted paragraph does not require that the principal balance be reduced by appellants, nor is there any requirement that it be reduced in any particular manner.
The final judgment of foreclosure found the total amount of the indebtedness owed to appellees to be in the sum of $1,147,538.-87. Pursuant to that final judgment the mortgaged property was sold to the highest and best bidder for the sum of $700,000. It makes no difference that the appellees were the highest and best bidders and therefore the purchasers at the foreclosure sale. As a result of the foreclosure the amount owed on the loan was reduced to something in excess of $300,000, which sum is substantially under the $728,000 recited in the above quoted provision in the written guaranty agreement. It was after the foreclosure sale and after the application of the proceeds from the foreclosure sale that the deficiency judgment giving *332 rise to the appeal sub judice was entered. At that time, as above observed, the balance of Elm’s obligation to appellees “the principal balance under said loan” had been reduced to a sum substantially less than $728,000.
The record reveals that the written instrument was the work product of appel-lees. Had it been appellees’ intention to release the individuals from any obligation pursuant to the guaranty agreement only after appellees had been paid a sum sufficient to reduce the obligation to $728,000 it would have been a simple matter to have so stated. The agreement makes no mention of payment. Appellees now urge however that such was the intention of the parties. If such be true then clearly the written agreement is ambiguous and parol evidence should have been admitted to explain the intention of the parties. Appel-lees are impaled on the horns of a dilemma. If the written guaranty means what it says then the individual appellants’ obligations thereunder ceased when the balance was reduced to a figure below $728,000. If the agreement does not mean what it says and if such was not the intention of the parties, then parol evidence should have been admitted in an attempt to explain the patent ambiguity. In my view, the guaranty is ambiguous. An ambiguous writing is one which is subject to different interpretations by two disinterested and reasonable persons. Judge Mills and I are both disinterested and are both reasonable. We interpret the instrument differently. A fortiori it is ambiguous.
Regardless upon which horn of the dilemma appellee seeks to repose, in my view reversal is required.